UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA J. CROKER,<br><br>    Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>    Defendant. | No.  2:15-cv-2423-EFB<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act.  The parties have filed cross-motions for summary judgment.  For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.   BACKGROUND

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since June 30, 2005.  Administrative Record ("AR") 148-155.  Plaintiff's application was denied initially and upon reconsideration.  *Id.* at 77-81, 83-88.  On October 9, 2014, a hearing was held before administrative law judge ("ALJ") David M. Blume.  *Id.* at 37-56.  Plaintiff was represented by counsel at the hearing, at which she and a vocational expert testified.  *Id.*

On December 29, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 22-32. The ALJ made the following specific findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of June 30, 2005 through her date last insured of December 31, 2010 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: right knee internal derangement and depression (20 CFR 404.1520(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

\* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could perform detailed but not complex tasks.

\* \* \*

6. Through the date last insured, the claimant was capable of performing past relevant work as a collection agent. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, at any time from June 30, 2005, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(f)).

*Id.* at 24-32.

Plaintiff's request for Appeals Council review was denied on September 21, 2015, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-7.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

*N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) assessing her severe impairments at step-two; (2) failing to provide sufficient reasons for rejecting the opinions of her treating physicians, and (3) discrediting her subjective complaints absent clear and convincing reasons. ECF No. 10 at 17-34.

Plaintiff first argues that the ALJ erred by finding that her only severe impairments were right knee internal derangement and depression.[2] ECF No. 10 at 18-21. "The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The purpose is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were not taken into account. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At step two of the sequential evaluation, the ALJ determines which of claimant's alleged impairments are "severe" within the meaning of 20 C.F.R. § 404.1502(c). A severe impairment is one that "significantly limits" a claimant's

---

[2] The Commissioner's brief does not address plaintiff's step-two argument. Admittedly, the argument is advanced in plaintiff's brief under two separate argument headings, each styled as a challenge to the ALJ's rejection of diagnoses assessed by plaintiff's treating physicians. *See* ECF No. 10 at 18 (argument heading regarding assessed physical impairments), 26 (argument heading concerning assessed mental impairments). Notwithstanding plaintiff's curious organization and choice of heading titles, the motion explicitly advances arguments challenging the ALJ's step-two findings. *Id*. at 19 ("The ALJ's step two finding that Ms. Croker's only legally severe physical impairments is her right knee internal derangement fails to validly reject or even to acknowledge the abundant evidence of bilateral knee pain.") and ("The ALJ also improperly minimized the functional impact of Ms. Croker's cervical radiculopathy by finding it non-severe at step two."), 10 (ALJ improperly found her lumbar degenerative disc disease was not severe based on his finding that "it was not severe or symptomatic enough to warrant intervention and that she be treated with home exercise and medications.") (quotations omitted); 26 ("The ALJ, at step two, made a puzzling decision to bifurcate her mental impairments— declaring that her anxiety does not even cause more than minimal limitations in her mental function while finding that her depression is legally severe.").

"physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 96-3p).

First, plaintiff argues that the ALJ erroneously concluded that her left knee osteoarthritis was not a severe impairment. ECF No. 10 at 18-19. At step-two the ALJ found that plaintiff's severe impairments only included right knee internal derangement and depression. AR 24. The record, however, contains substantial medical evidence of a left knee impairment that has more than a slight or minimal effect on plaintiff's ability to perform basic physical activity. In May 2009, plaintiff presented "mainly with left knee pain," which was treated with injections. AR 489. An x-ray showed mild to moderate osteoarthritis, which was greatest at left patellofemoral joint. *Id*. at 578, 708. She received another left knee injection in June, at which time she reported that her "left knee really has not gotten any better at all". *Id*. at 490, 487. A September treatment note indicates that plaintiff received more knee injections, but that her left knee was "still very painful." *Id*. at 479. Similar complaints were also documented the following month. *Id*. at 473. While subsequent treatment notes indicate treatment primarily for other impairments, they also reflect that plaintiff has chronic arthritis in her knees, which were treated with narcotic pain medication. *Id.* at 419, 319. A treatment note from April 2012, also shows that plaintiff's physician recommended plaintiff undergo pool therapy to help with her knee pain caused by osteoarthritis in her knees, as her ability to exercise was likely to have orthopedic limitations. *Id*. at 319.

In light of that evidence, it is salient that the ALJ failed to provide any explanation for his finding that plaintiff's left knee osteoarthritis was non-severe. The ALJ's decision is devoid of any meaningful discussion of the medical evidence concerning plaintiff's left knee impairment. In assessing the limitations imposed by plaintiff' right knee impairment, the ALJ provided a summary of plaintiff's medical records, which included a reference to the May 2009 treatment note documenting plaintiff's complaints of left knee pain. AR 26. The ALJ also summarized the

1    findings of the x-ray taken the same month, but failed to mention the radiologist impression

2    finding mild to moderate osteoarthritis, greatest at the left joint. *See id*. at 29, 1004. The ALJ,

3    however, cited to these two records in assessing plaintiff's right knee impairment, with no

4    discussion relating to plaintiff's left knee osteoarthritis. Moreover, the ALJ failed to discuss

5    evidence documenting that plaintiff's left knee impairment was treated with injections as well as

6    narcotic pain medication. The failure to address this probative evidence regarding plaintiff's knee

7    impairment constitutes error. *Vincent v. Heckler*, 739 F.2d 1391, 1394-95 (9th Cir. 1984) (the

8    ALJ "must explain why significant probative evidence has been rejected.") (quotations omitted);

9    *see also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ need not

10   discuss evidence that is neither significant nor probative).

11       The ALJ also failed to fully consider evidence documenting plaintiff's right arm

12   impairment. At step-two, the ALJ concluded that plaintiff's carpel tunnel syndrome and cervical

13   degenerative disc disease were not severe impairments. AR 24-25. In making this finding, the

14   ALJ noted that one treatment record reflected plaintiff's reports of not feeling arm symptoms

15   from carpal tunnel syndrome. AR 25. The ALJ also observed that plaintiff's treating physician

16   noted that plaintiff's "arm pain from neck pain may be interrelated, but she also noted magnetic

17   resonance imaging (MRI) scans of the cervical spine showed only mild disc/osteophytes

18   complexes." *Id*.

19       These two records, viewed in isolation, fail to accurately depict plaintiff's right arm

20   impairment. An August 2008 treatment note reflects that plaintiff experienced intermittent

21   numbness in her fingertips and toes, but at that time she was only diagnosed with paresthesias.

22   AR 499. In March 2009, plaintiff reported that her right shoulder started to ache. *Id*. at 492. An

23   x-ray of plaintiff's neck "just show[ed] some arthritis, but a shoulder x-ray indicated that a tendon

24   likely tore and pulled a bone fragment. *Id*.

25       In May 2009, plaintiff reported "developing some right shoulder pain that is associated

26   with some numbness in her index and long finger[s]." *Id*. at 490. Her physician noted in regard

27   to the shoulder pain there may be a component of cervical radiculopathy, and it was

28   recommended that plaintiff restart rotator cuff exercises. *Id*. at 490. In September, plaintiff

again complained of right arm pain. AR 479-480. Her shoulder had a fair range of motion but with general pain. *Id*. at 480.

An EMG study was performed in October 2009. The report indicated that plaintiff had a history of shoulder pain radiating to her elbow and forearm, but that an MRI of the cervical spine was not revealing. *Id*. at 709. However, the EMG study found signs of mild and chronic bilateral cervical radiculopathy, which was more prominent on the right, and moderate carpal tunnel syndrome. *Id*. at 711. The following month, plaintiff complained of neck and arm pain. AR 469-470. On examination, palpation of plaintiff's cervical spine caused shock sensations down the right arm. *Id*. at 470. Plaintiff had slightly less sensation on three fingers of her right hand, but no atrophy was noted. *Id*. Plaintiff, however, reported that it felt like the pain was not "coming from the wrist, but from the neck." *Id*. Plaintiff's physician noted that plaintiff "doesn't feel a large part of her arm symptoms," and that her carpal tunnel syndrome may be unrelated to her radiculopathy. *Id*. Treatment notes from March 2010 also show that plaintiff experienced a flare up in her neck and arm pain. *Id*. at 458.

The ALJ failed to reference or discuss most of these treatment records. Instead, in finding that plaintiff did not have a severe arm impairment, the ALJ focused solely on the minimal MRI findings and plaintiff's reports to her physician that she didn't feel arm symptoms from her carpel tunnel syndrome. Again, these isolated records fail to fully account for plaintiff's impairment. While the MRI results were devoid of significant findings, plaintiff's EMG study, which the ALJ ignored, confirmed cervical radiculopathy in plaintiff's right arm. As discussed above, plaintiff's treatment records consistently reflected complaints of pain and medical treatment for this impairment. Moreover, plaintiff's report of not feeling arm symptoms *from carpal tunnel*—a report that is relevant to assessing the severity of plaintiff's carpel tunnel syndrome—has no bearing on whether plaintiff's cervical radiculopathy (an impairment not even discussed by the ALJ) caused more no more than a minimal effect on the ability to work. *See Webb*, 433 F.3d at 686.

Moreover, the ALJ's failure to properly consider the severity of plaintiff's left knee and arm impairments at step-two was not harmless, as he failed to consider these impairments in

assessing plaintiff's RFC.[3]  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding harmless an ALJ's failure to list certain impairment at step two where ALJ fully evaluated the impairment at step four); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996) (if one severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis) (citing 20 C.F.R. § 404.1523).

Accordingly, the ALJ's step-two finding is not supported by substantial evidence.  As the ALJ failed to consider significant medical records, the matter must be remanded for further proceedings to allow the ALJ consider and resolve any conflicts in the medical evidence.  *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.") (internal quotes and citations omitted); *Edlund v. Massanari*, 253 F.3d at 1156 ("the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (holding that the appellate court "cannot rely on independent findings of the district court. We are constrained to review the reasons the ALJ asserts.").[4]

IV.     CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED:  March 30, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

---

[3] The ALJ's RFC determination at step-four focuses solely on plaintiff's right knee internal derangement and depression.  AR 27-31.

[4] Because the matter must be remanded to permit the ALJ to fully evaluate plaintiff's impairments, the court declines to address plaintiff's remaining arguments.